* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS *Page 2 
1. The date of the injury, which is the subject of this claim, is January 6, 2003.
2. On such date, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, the employer-employee relationship existed between the Plaintiff and Defendant-Employer.
4. On such date, Defendant-Employer employed three or more employees.
5. On such date, the carrier of workers' compensation insurance in North Carolina for the Defendant-Employer was Key Risk Insurance Company or Defendant-Employer was self-insured.
6. Plaintiff's claim related to her right shoulder and arm is deemed compensable (Employer filed Form 60 on June 12, 2003).
7. Documents admitted into evidence include the following:
 a. Stipulated Exhibit #1: Plaintiff's medical records;
 b. Stipulated Exhibit #2: Carolina Case Management and Rehabilitation Services Reports;
 c. Stipulated Exhibit #3: Emily McKinney's nursing notes;
 d. Stipulated Exhibit #4: Defendants' Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents;
 e. Stipulated Exhibit #5: NCIC Forms;
 f. Plaintiff's Exhibit #1: Plaintiff's earnings statements;
 g. Plaintiff's Exhibit #2: Personnel records; and *Page 3 
 h. Plaintiff's Exhibit #3: was scheduled to be the Form 22 for similarly situated employee which Defendant has not produced as requested by Plaintiff through discovery and the Commission.
8. The issues to be determined by the Commission are:
 a. Whether suitable employment has been offered to Employee-Plaintiff; and
 b. What amount of compensation is Employee-Plaintiff entitled to for:
 (i) Temporary total disability compensation pursuant to N.C. Gen. Stat. § 97-29;
 (ii) Temporary partial disability compensation pursuant to N.C. Gen. Stat. § 97-30;
 (iii) Permanent partial disability compensation pursuant to N.C. Gen. Stat. § 97-31; and
 (iv) Medical Treatment.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The Plaintiff was 40 years old at the time of hearing before the Deputy Commissioner. She began work with the Defendant-Employer in food preparation beginning in November, 2002. The Plaintiff is Hispanic, and does not speak or understand much English. An interpreter was provided at the hearing before the Deputy Commissioner pursuant to Rule 616 of the Workers' Compensation Rules. *Page 4 
2. The Plaintiff did not complete high school but attended through the 10th grade in her home country of Guatemala. She left Guatemala in 1985 to come to the United States.
3. Prior to working for the Defendant-Employer, the Plaintiff worked in a beauty salon and worked cleaning houses and offices. She was also a machine operator.
4. The Plaintiff worked at the Defendant restaurant from 8:00 a.m. until 2:00 or 3:00 p.m. as a prep cook/ line cook. A job description was produced by the Defendants post-injury. Plaintiff worked full-time in this position, and she worked substantial overtime prior to her injury.
5. During her regular hours from 8:00 a.m. to 11:00 a.m., the Plaintiff would prepare foods, getting ingredients from a walk-in cooler located in trays on shelves or from a freezer. After the food was prepared, the Plaintiff took the prepared food back to the cooler or freezer for later use. Her job required lifting and transporting items weighing 15 to 20 pounds from the cooler and the stock rooms to the prep table. She was required to lift boxes of potatoes that would weigh approximately 15 to 20 pounds.
6. The Plaintiff would take food to a table, her "workplace," where she would wash and rinse the food and do other preparation work. The Plaintiff also prepared sandwiches, salads, and plates of various types of food such as crab, lobster, cheeses and condiments. The Plaintiff was required to work at a quick pace.
7. In the afternoons, the Plaintiff would work on the line with the line cooks, usually from 11:00 a.m. to 2:00 or 2:30 p.m., except when she worked overtime. The Plaintiff worked with ovens to place food in and take out food, which was above her shoulder height. The Plaintiff's job description stated, "all employees must be prepared to help the cooks on either side of them at any time if needed." *Page 5 
8. Christa Hahn, director of accounts for the Defendant-Employer, testified, and the Full Commission finds as fact, that the official job description for the Plaintiff's job required lifting and transporting items from the cooler and the stock rooms to the prep table involving lifting of up to 15 to 20 pounds, with some of the items weighing more.
9. On January 6, 2003, the Plaintiff was working in the kitchen at her workplace preparing and cutting vegetables when a ladder behind her fell from its station and hit the Plaintiff in the back of her shoulder, knocking her forward with her body, right elbow and right arm hitting the work station. The Plaintiff was treated by several physicians for her injuries.
10. The Plaintiff developed chronic burning pain beneath her right scapula and numbness and pain along the medial side of the arm and forearm. Her pain was made worse by movement of the shoulder. On July 1, 2003, Dr. Yuson, a rehabilitation physician, conducted an EMG study which revealed ulnar neuropathy with "denervation" or injury to the actual nerve fibers. Dr. Robert Sypher, a board-certified orthopedic surgeon, noted winging of the scapula upon examination on January 28, 2004.
11. A second EMG study by Dr. Pelligra, a physical medicine physician, revealed an injury to the long thoracic nerve which effects the strength in the serratus anterior muscle. On February 19, 2004, the Plaintiff had surgery to correct the ulnar neuropathy. Nothing surgically could be done about the shoulder problem.
12. Dr. Sypher assigned a twenty-five percent (25%) permanent partial impairment on January 26, 2005, based upon chronic neuropathic pain and pain-induced impairment of work capacity and lifestyle capacity. Dr. Sypher assigned permanent work restrictions of five (5) pounds lifting using both hands and a three-pound lifting restriction using the right arm. *Page 6 
13. After medical treatment concluded, the Plaintiff returned to work for the Defendant-Employer on April 19, 2005. There were many duties of her position that the Plaintiff could not perform, such as lifting boxes of potatoes. In order to get buckets of food out of the freezer, the Plaintiff would have to ask for assistance. The Plaintiff testified: "Every day I always have to ask for a favor." The Plaintiff no longer carried trays of food after she finished apportioning the food to place it back into the cooler. Before the injury, she was required to carry those trays back into the cooler. After her return to work, other employees had to help her get food out of the cooler. It happened daily that she had to ask for assistance, and the Plaintiff indicated problems with obtaining help from her co-workers: "Some don't want to help me and some will say yes."
14. Although the Plaintiff was returned to work for five hours per day initially, by August, 2005, the Defendant-Employer had reduced her work time to three hours per day from 10:00 a.m. to 1:00 p.m. The Plaintiff was expected to do the same amount of work in three hours that she was performing in five hours. Before her compensable injury, the Plaintiff worked 7 to 8 hours per day, and more hours during holidays. Even with her reduced hours, the Plaintiff requested help from co-workers around three times per day.
15. With her injury and continuing chronic pain, Dr. Sypher did not want the Plaintiff to return to any type of lifting position and specifically mentioned in his office note that she should work a "sedentary desk-type duty." During his deposition, Dr. Sypher was given a description of the Plaintiff's light-duty position, and Dr. Sypher indicated that it would be more appropriate for her to be in a "hostess" position or some similar position.
16. When the Plaintiff was returned to work in April 2005, she was placed at a small table at the end of the work stations in the kitchen and given a chair so that she wouldn't have to *Page 7 
stand very much. The positioning of the table height and the area where she was stationed was uncomfortable and caused her to stoop over too much.
17. As a result of her compensable injury by accident of January 6, 2003, the Plaintiff's capability to work long hours before her injury has been substantially impaired. Before her injury, the Plaintiff worked 75.55 hours for the period ending December 1, 2002. For the period ending on December 29, 2002, she worked 15 hours of overtime. For the two-week period ending January 8, 2006, the Plaintiff worked 6.4 hours per week. For the weeks ending February 5, 2006, she had worked 4.6 hours per week. The Plaintiff testified that she continued to be in pain even with the little amount of work she was given during three hours.
18. As of the date of hearing before the Deputy Commissioner, the Plaintiff had continued pain, numbness, and felt a lot of "pulling" of her nerves in her shoulder area. She continued to experience weakness and her right arm would fall asleep. The Plaintiff's sleep was interrupted, and her arm would go numb causing her to wake at night. The plaintiff, in her opinion, could not work a normal shift.
19. During her three hours of work per day, the Plaintiff was only able to put vegetables in a bag and did not actually cut up the vegetables as she did in her job pre-injury. Before her injury, the Plaintiff made the creamed spinach, but upon her return to work, she only apportioned the food in containers. Further, she did not prepare calamari as she did before, but simply placed eight ounces into a cup.
20. Executive Chef Mike Kimball testified that the tasks which the Plaintiff performed upon her return to work, given her severe restrictions, were quite limited. A February 2004 memo from Ms. Hahn with reference to the post-injury job offer states: "[W]e will make *Page 8 
necessary accommodations to have someone else do all her heavy lifting to put items away. It would not require any lifting of her right arm."
21. After her return to work as a prep-cook, the Plaintiff made orchid garnishes, prepared one to two bags of spinach, and portioned vegetables, cream spinach, and calamari into bags or cups and weighed them. The Plaintiff was no longer able to actually prepare the foods.
22. The Plaintiff could not do fifty percent (50%) of her pre-injury job. Chef Kimball had not had a person working three hours a day on a regular basis since he had been at the restaurant. He could also not recall ever having an employee that only did weighing and apportionment duties such as performed by the Plaintiff.
23. Chef Kimball confirmed that the Plaintiff did have to ask for assistance on a regular basis and that he would not normally hire somebody to do the tasks that the Plaintiff performs.
24. Plaintiff had not received any temporary partial disability benefits from the date of her return to employment with the Defendant-Employer on April 19, 2005.
25. The Form 18 indicates a weekly wage of $340.00 per week. A Form 62 was filed June 12, 2003 by the Defendants stating an average weekly wage of $300.86. The Plaintiff was paid temporary total disability benefits at the rate of $200.58. A Form 22 was submitted by the Defendants but was filled out incorrectly. The Defendants had not paid any benefits to the Plaintiff since April 19, 2005.
26. Defendants were to have submitted to the Deputy Commissioner a Form 22 for a similarly situated employee, because the Plaintiff worked considerably less than 52 weeks prior to the date of injury in this claim. Because the Defendants had not provided a Form 22 with respect to a similarly situated employee, the Commission will look to the Plaintiff's earnings for *Page 9 
the period ending December 1, 2002; pay date December 9, 2002; the pay for period ending December 15, 2002; pay date December 23, 2002; the pay for period ending December 29, 2002; and pay date January 6, 2003 to determine Employee-Plaintiff's average weekly wage. Based upon this information, the Full Commission finds that the Plaintiff's average weekly wage would be $341.00 per week, yielding a compensation rate of $227.34.
27. Based upon the testimony at the hearing before the Deputy Commissioner, there are no jobs available with other restaurants similar to that of the position that Plaintiff had been working since April 2005 that would pay her a comparable wage as her pre-injury earnings with the Defendant-Employer. The Director of Operations, Mr. Larry Morgan, testified that the only persons he could identify that might hold similar positions with another Streets Avenues restaurant were minimum wage students in the culinary school in Wilmington, North Carolina.
28. The Plaintiff's current restrictions of five pounds lifting using both hands and a three pound lifting restriction using the right arm would not be suitable for work as a prep-cook/ line cook with the Defendant restaurant.
29. The Industrial Commission has previously ordered an evaluation with Dr. Hines. Dr. Hines has made recommendations for appropriate treatment which has not been authorized by the Defendants.
30. At the hearing before the Full Commission, the parties represented that the Plaintiff was terminated from her employment with Defendant-Employer on November 2, 2006, which occurred after the hearing before the Deputy Commissioner in this matter.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 10 
 CONCLUSIONS OF LAW
1. Disability under the Workers' Compensation Act refers to a diminished earning capacity. Peoples v. Cone Mills Corp., 316 N.C. 426,342 S.E.2d 798 (1986). A suitable job is one the employee is capable of performing, given her age, education, physical limitations, experience and vocational skills. Webb v. Power Circuit, Inc., 141 N.C. App. 507,540 S.E.2d 790 (2000), cert. denied 353 N.C. 398, 548 S.E.2d 159 (2001). The apportionment position offered to the Plaintiff in April 2005 was not suitable either at the time of the original offer of the position or later when it was reduced to three hours per day in July, 2005. The official job description of Prep-Cook/ Line Cook indicates this job requires lifting and other activity well in excess of Employee-Plaintiff's restrictions or limitations. Id.
2. The Defendants offered no credible evidence on the issue of whether other employers other than the Defendant-Employer would hire the Plaintiff at a similar position at a similar pay schedule to her pre-injury wage. Defendants have therefore failed to rebut the presumption of continuing disability. Stamey v. N.C. Self InsuranceGuaranty Fund, 131 N.C. App. 662, 505 S.E.2d 596 (1998).
3. The Plaintiff could have justifiably refused the proffered position she had been working for three hours per day until her termination on November 2, 2006. The fact that the Plaintiff may have been capable for short periods of time of performing a heavily modified position of day prep person tendered by the Defendant-Employer does not, as a matter of law, establish the Plaintiff's ability to earn wages. Saums v. RaleighCommunity Hospital, 346 N.C. 760, 487 S.E.2d 746 (1997).
4. In the present case, the Plaintiff has proven the Day Prep position is specifically tailored for her as an injured worker and is not a position which is generally available in the job *Page 11 
marketplace. She cannot find sedentary work for three hours a day at another restaurant kitchen. The drastic reduction in hours alone strongly suggests a temporary makeshift job was what she returned to for Defendant-Employer. She was working overtime hours before this injury. An employer may not rebut the presumption of disability by offering the injured employee a position with the employer that is not ordinarily available in the competitive job market under normally prevailing market conditions, as such a position would not accurately reflect the injured employee's wage earning capacity. See Jenkins v. Easco AluminumCorp., 142 N.C. App. 71, 541 S.E.2d 510 (2001).
5. Based on the Plaintiff's earnings for the period ending December 1, 2002; pay date December 9, 2002; the pay for period ending December 15, 2002; pay date December 23, 2002; the pay for period ending December 29, 2002; and pay date January 6, 2003, the Full Commission concludes that Plaintiff's average weekly wage is $341.00 per week, yielding a compensation rate of $227.34.
6. The Plaintiff is entitled to temporary partial disability at the weekly rate of $227.34 from April 19, 2005 until the date the Plaintiff was terminated November 2, 2006. N.C. Gen. Stat. § 97-30.
7. The Plaintiff may be entitled to additional compensation under the Act for the period after the Plaintiff's termination on November 2, 2006; however, because the plaintiff's termination occurred after the Deputy Commissioner hearing in this matter, the issue of disability after November 2, 2006, is not presently before the Commission. N.C. Gen. Stat. §§ 97-29 and 97-30.
8. The plaintiff is entitled to receive medical treatment that is reasonably necessary to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97- *Page 12 
25. Furthermore, the Defendants are directed to provide the medical treatment recommended by Dr. Hines. Id.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The Defendants shall pay to the Plaintiff temporary partial disability compensation at the weekly rate of $227.34 from April 19, 2005, until the date the Plaintiff was terminated on November 2, 2006. Because this compensation has accrued, the Defendants shall pay the Plaintiff in a lump sum. This award is subject to the attorney's fee provided herein.
2. The Plaintiff may be entitled to additional compensation under the Act for the period after the Plaintiff's termination on November 2, 2006; however, because the plaintiff's termination occurred after the Deputy Commissioner hearing in this matter, the issue of disability after November 2, 2006, is not presently before the Commission. The parties are directed to stipulate to the issue of disability occurring after November 2, 2006, or the parties may request a hearing before a Deputy Commissioner by the filing of a Form 33 with the Industrial Commission.
3. The Defendants shall continue to provide to the Plaintiff medical treatment that is reasonably necessary to effect a cure, give relief, or lessen the period of disability. Furthermore, the Defendants are directed to provide the medical treatment recommended by Dr. Hines. The Industrial Commission has previously ordered an evaluation with Dr. Hines. Dr. Hines has made recommendations for appropriate treatment which has not been authorized by the Defendants. Defendants shall forthwith authorize all treatment recommended by Dr. Hines for the Plaintiff's *Page 13 
continued chronic pain problem. Defendants shall provide a qualified language interpreter for all medical appointments of Employee-Plaintiff.
4. The Defendants shall pay back benefits owing to Employee-Plaintiff for periods of temporary total disability for which Defendants have paid $200.58 per week in compensation when it should have paid $227.34, a difference of $26.76 per week. These back benefits shall be subject to the attorney's fee provided herein.
5. The Defendants shall pay to the Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the Plaintiff herein. Because this fee is based upon compensation that has accrued, the Defendants shall pay the Plaintiff's counsel in a lump sum.
This 7th day of November 2007.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ DANNY LEE McDONALD COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1