***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The original claim was the subject of an Opinion and Award filed January 18, 2002 and was incorporated by reference in the Opinion and Award by Deputy Commissioner Deluca filed June 25, 2007.
2. There is no present dispute concerning any past payment of disability compensation by defendants to plaintiff under the 2002 Opinion and Award.
3. The following documents were admitted into the record at the Deputy Commissioner's hearing as:
 a. Stipulated Ex. No. 1-The Pre-trial Agreement
 b. Stipulated Ex. No. 2 — Industrial Commission Proceedings Leading to Hearing
 c. Stipulated Ex. 3 — Plaintiff's medical records from Deputy Commissioner Holmes November 27, 2001 hearing
 d. Stipulated Ex. No. 4 — Plaintiff's medical records since November 2001.
5. The issues before the Full Commission are whether plaintiff has refused suitable employment proffered to her by defendants in violation of the provisions of N.C. Gen. Stat. § 97-32; whether plaintiff is currently disabled due to her work-related injury; whether plaintiff's N.C. Gen. Stat. § 97-25 motion to approve pain specialists at Carolinas Pain Institute to assume her care for pain management should be granted; and whether defendants prosecuted this hearing without reasonable ground in violation of the provisions of N.C. Gen. Stat. § 97-88.1.
 *********** *Page 3 
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on January 11, 1958, and obtained a GED. She was employed by defendants at their Yadkinville, North Carolina facility for 23 years in various unskilled positions in its yarn manufacturing plant.
2. On April 9, 2001, plaintiff suffered a compensable injury to her back, which is the subject of an Opinion and Award of Deputy Commissioner Phillip Holmes filed on January 18, 2002. The 2001 Opinion and Award awarded plaintiff continuing temporary total disability compensation beginning April 17, 2001.
3. On August 6, 2001, plaintiff underwent surgery by Dr. William Brown, a neurosurgeon, to her low back to repair a ruptured disc at L5-S1. Dr. Brown elected not to operate on the bulging disc at L4-5. Subsequent to that surgery, in May 2002, plaintiff returned to work for defendants as a visual inspector for one week and one day. Thereafter, she left work due to an increase in her back pain. Plaintiff's temporary total disability benefits were resumed at that time.
4. Plaintiff continued her post-operative medical care with Dr. Brown. From 2002 to 2004, plaintiff participated in additional physical therapy treatments, low back injections and a wellness program to try to improve her pain condition. These treatments provided little pain relief. On January 30, 2003 and at defendant's request, plaintiff underwent an independent medical evaluation with Dr. O. Del Curling, a neurosurgeon in Winston-Salem, North Carolina. Dr. Curling recommended neuroactive medications to help plaintiff control her pain. Plaintiff did not undergo this treatment with Dr. Curling and continued her medical care with Dr. Brown. *Page 4 
5. In June 2003, plaintiff began working with Denise Robertson, a vocational counselor. Between June 2003 and June 2005, plaintiff sought work and looked into more than 200 jobs. During this time, plaintiff completed a course in Microsoft Word processing at Surry Community College. As part of the vocational process, from September to November 2003, plaintiff performed volunteer work at Family Care of Winston-Salem, a medical office. She worked 2 to 3 days a week, from 9:00 a.m. to noon, filing and answering phones. She stopped this work due to increased pain in her back. In 2004, plaintiff also took an advanced course in Microsoft Office.
6. In September 2004, plaintiff underwent a radio frequency facet rhizotomy by Dr. Brown. The purpose of this procedure was to disconnect the nerve causing plaintiff's pain to block the pain signals from that location. Dr. Brown felt this procedure was partially successful in alleviating plaintiff's pain. According to plaintiff, this procedure relieved her back pain for three weeks before it returned.
7. On October 5, 2004, plaintiff reached maximum medical improvement from her compensable low back injury.
8. At the recommendation of Ms. Robertson, from February 2005 through April 2005, plaintiff performed work adjustment at Goodwill Industries in Winston-Salem. She worked six hours a day, five days a week. At Goodwill, plaintiff worked in the computer lab showing people how to use the computers. According to plaintiff, her pain increased during this effort, so Dr. Brown reduced her schedule to four hours per day. The pain in her right hip and leg continued to get worse and plaintiff ultimately stopped working at Goodwill.
9. In April 2006, plaintiff asked the Commission to approve her family physician, Dr. Terry Hess, as a treating physician in this case, in order to prescribe pain medication. In *Page 5 
August 2006, the Commission denied plaintiff's request and approved Dr. Susan Yuson as her authorized treating physician. Pursuant to this Order, plaintiff saw Dr. Yuson twice, in January 2007 and February 2007, for pain medication for her low back.
10. Dr. Hess is board certified in family medicine and has been plaintiff's primary family physician since 1994. Dr. Hess saw plaintiff twice for back pain, on May 8, 2006 and September 11, 2006. In May 2006, she saw Dr. Hess for pain medication. Plaintiff was taking Mobic, an anti-inflammatory non-steroidal, and Neurontin for her pain. Both of these drugs are non-narcotic. Dr. Hess switched plaintiff from Neurontin to Lyrica, another non-narcotic, but it did not control her pain as well and he switched her back to Neurontin.
11. On July 19, 2006, defendants provided Dr. Brown an Industrial Commission questionnaire and job description for an administrative assistant position that was available for plaintiff at defendant-employer's Yadkinville plant. Although there is confusion over when Dr. Brown approved this job for plaintiff, he did approve her return to work as an administrative assistant on a gradual return to work of four hours a day for the first week, six hours a day the second week, and then full time thereafter.
12. On September 5, 2006, plaintiff returned to work at defendant-employer as an administrative assistant in the personnel department. She started working the hours of 8:00 a.m. to noon. According to plaintiff, she did some filing, data entry, and got office supplies. She also observed hearing tests being performed on employees and the intent was for her to get certified to perform hearing tests. She also reviewed benefit books for defendant-employer's benefits. Plaintiff testified that she did not perform several of the tasks on the job description.
13. As explained by Eddie Norman, the facility human resources manager, the administrative assistant job for the personnel department was being handled by a number of *Page 6 
individuals, but needed a full time person in the job. As a result, in the spring of 2006, the position was budgeted for a full time position. Mr. Norman offered the job to plaintiff because of defendant-employer's policy to offer administrative jobs to current qualified plant employees. Furthermore, plaintiff had a long and satisfactory work record with defendants, was qualified for the position, and he felt she was appropriate for the position. The need for an administrative assistant still exists at the defendant-employer's plant. The Commission finds that the administrative assistant position was suitable work for plaintiff.
14. Loretta Matthews, plant nurse, worked directly with plaintiff on her return to work. As explained by Ms. Matthews, there is a need for a full time administrative assistant in the personnel department. She assigned a number of tasks to plaintiff and there were many other tasks plaintiff could have performed; however, plaintiff was not able to work a full schedule or be trained to perform additional tasks.
15. Plaintiff saw Dr. Hess on September 11, 2006, shortly after her return to work. At that time, plaintiff expressed that she was still having low back pain. She was taking Mobic, Neurontin, and Tylenol 3 at the time. Dr. Hess replaced the Tylenol 3 with Ultram, a non-narcotic which would not cause problems with the drug screen, would have less side effects and would not make her feel as "drunk." Dr. Hess switched plaintiff to Ultram to allow her to control her pain while she worked. He would have recommended that she take Ultram and then go to work. Dr. Hess reiterated that he would recommend that plaintiff take Mobic, Neurontin, and Ultram when returning to work. The purpose of these medications is to try and manage pain and Dr. Hess finds them effective in doing so.
16. Dr. Brown agreed that Ultram is a non-narcotic anti-inflammatory and that plaintiff could have gone to work while taking Ultram, as it would not affect her mental faculties. *Page 7 
He further stated that if plaintiff stopped taking her Ultram, he would expect to see her pain increase. He also testified that if plaintiff took her Ultram while at work, her pain may not have increased. Dr. Brown testified that he would not have told plaintiff to discontinue any non-narcotic painkiller to go to work, as non-narcotics would not interfere with her thought process.
17. Plaintiff ultimately discontinued working on September 25, 2006, citing increased low back and right leg pain. Plaintiff testified that before and during work, she did not take her pain medication as prescribed by her physicians. She testified that the pain medication made her sleepy and unable to concentrate. She further testified that no one at defendant-employer told her she could not take her pain medication while working and that she did not inform anyone that she was not taking her pain medication while at work. Ms. Matthews testified that it would not have been a problem for plaintiff to take her pain medication while at work. Plaintiff's testimony with regard to her increased pain during her trial return to work, sleepiness and inability to concentrate as a result of her pain medication is found to be credible and the Commission accepts that testimony as fact.
18. By October 10, 2006, plaintiff developed left hip pain due to the progression in her lumbar degenerative disc disease condition. At this time, plaintiff was on narcotics and Dr. Brown advised that she could not perform the administrative assistant job because it would aggravate plaintiff to go off narcotic medications. As of October 10, 2006, Dr. Brown discharged plaintiff from his care with permanent restrictions of no lifting greater than 20 pounds and to alternate between standing and sitting on an hourly basis. Dr. Brown testified that these restrictions were for plaintiff's activities, but not for work; however, Dr. Brown felt that because of narcotics, plaintiff should not return to work. *Page 8 
19. On or about February 5, 2007, Dr. Brown referred plaintiff to Dr. North at Carolina Pain Management. Plaintiff clarified that she requested that Dr. Brown refer her to Dr. North. Plaintiff saw Dr. North on one occasion for medication management. Defendants requested that plaintiff return to Dr. Curling, since his treatment recommendations were never implemented. Plaintiff acknowledged that she had no particular problem or concern over Dr. Curling or how he treated or examined her. Dr. Brown found no reason to favor Dr. Curling or Dr. North with respect to managing plaintiff's pain medications. The Commission finds that Dr. Curling shall be plaintiff's treating physician and not Dr. North, unless Dr. Curling recommends concurrent treatment by Dr. North or some other doctor he recommends.
20. Plaintiff is permanently limited to work activities consisting of limited bending and twisting, short periods of sitting, standing or walking for no more than up to about three hours total per day, and no lifting of objects weighing more than 20 pounds due to her chronic severe low back pain condition and her right leg pain condition.
21. Plaintiff testified that her right hip pain is worse than it was previously, but her left hip pain is only occasional and her low back pain has improved, but comes and goes.
22. The Commission finds that additional back surgery will not improve plaintiff's chronic severe low back pain condition.
23. Defendants presented insufficient evidence to support the allegation that plaintiff's current disability is not the result of her work-related injury.
24. Defendants have not prosecuted this action without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 9 
 CONCLUSIONS OF LAW
1. On April 9, 2001, plaintiff sustained an admittedly compensable injury arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). Disability under the Workers' Compensation Act refers to a diminished earning capacity. Peoples v. Cone Mills Corp., 316 N.C. 426,342 S.E.2d 798 (1986). Once plaintiff presents competent evidence of her inability to earn wages, the burden then shifts to defendant to show that plaintiff is capable of obtaining suitable employment, taking into account her physical and vocational limitations. Kennedy v. DukeUniversity Medical Center, 101 N.C. App. 24, 398 S.E.2d 677 (1990). A suitable job is one the employee is capable of performing, given her age, education, physical limitations, experience and vocational skills.Webb v. Power Circuit, Inc., 141 N.C. App. 507, 540 S.E.2d 790 (2000),cert. denied 353 N.C. 398, 548 S.E.2d 159 (2001). An unsuccessful return to work effort under N.C. Gen. Stat. § 97-32.1 is not sufficient to rebut the presumption of continuing disability.
3. In this case, plaintiff was found to be disabled pursuant to the January 18, 2002 Opinion and Award and is entitled to the presumption of continuing disability. The burden shifts to defendants to show that plaintiff is capable of obtaining suitable employment, taking into account her vocational and physical limitations. Saums v. RaleighCommunity Hospital, 346 N.C. 760, 487 S.E.2d 746 (1997), citing Kennedyv. Duke Univ. Med. Center, 101 N.C. App. 24, 398 S.E.2d 677 (1990). Defendants offered plaintiff an administrative assistant position, since plaintiff was qualified for the position and had a long and satisfactory work history with defendants. The job was within plaintiff's restrictions and was suitable for plaintiff. *Page 10 
4. If an injured employee refuses employment procured for him, which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. In this case, plaintiff was justified in discontinuing her trial return to work, given her increased back and hip pain and the fact that her pain medications made her sleepy and impaired her concentration. Jenkins v.Easco Aluminum Corp., 142 N.C. App. 71, 541 S.E.2d 510 (2001).
5. As a result of her compensable injury, plaintiff is entitled to temporary total disability benefits at a rate of $314.26 per week beginning April 17, 2001 and continuing until further order of the Commission, except for the wages she earned during the three weeks in 2006 she worked for defendant-employer. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Dr. Curling is designated as plaintiff's treating physician. N.C. Gen. Stat. §§ 97-2(19); 97-25.
7. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by insurers when the Commission orders the insurer to make or continue payments of compensation to the injured employee. In its discretion, the Commission find that plaintiff's counsel is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.
8. Defendant did not defend this action without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 *********** *Page 11 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability benefits at a rate of $314.26 per week beginning April 17, 2001 and continuing until further order of the Commission, except for the wages she earned during the three weeks in 2006 she worked for defendant-employer.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Dr. Curling is designated as plaintiff's treating physician.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, including an expert witness fee in the amount of $350.00 to Dr. Hess, if not paid by prior Opinion and Award.
This 31st day of January, 2008.
S/ LAURA KRANIFELD MAVRETIC COMMISSIONER
 CONCURRING: *Page 12 
 S/ PAMELA T. YOUNG CHAIR
 S/ DIANNE C. SELLERS COMMISSIONER *Page 1