JIMMY R. WEBB, Employee-Plaintiff v. POWER CIRCUIT, INC., d/b/a HOKE ELECTRIC, Employer-Defendant and STATE AUTO INSURANCE COMPANIES, Carrier-Defendant

No. COA99-1437

(Filed 29 December 2000)

### 1. Workers' Compensation— work-related injury—sufficiency of evidence

The Industrial Commission did not err in a workers' compensation action by finding and concluding that plaintiff had met his initial burden of proving a work-related injury where plaintiff testified that he suffered severe pain as a result of bending over and picking up a drop cord; he reported this to his supervisor and soon had to cease work, being unable even to remove his tools from the truck; he was treated by a doctor for three months at the

recommendation of the Division of Vocational Rehabilitation; the doctor testified that plaintiff suffered from a herniated disc and a protruding disc and that such an injury was consistent with plaintiff's complaints of pain; and plaintiff testified that the pain had continued since the injury, that he could not stand for more than forty-five minutes or sit for more than two hours, that he was unable to perform any of his previous physical activity, and that he had become increasingly depressed as a result of the accident.

**2. Workers' Compensation— disability—availability of suitable jobs**

Defendants in a workers' compensation action did not meet their burden of establishing that suitable jobs were available to a plaintiff who had shown disability from a back injury where plaintiff testified that he had been engaged in manual labor all his life with only an eighth-grade education, that he would like to return to work but had not looked because he could not keep a job as a result of his back pain, and it was then incumbent on defendant-employer to come forward with evidence that unexplored employment exists for plaintiff given his age, education, physical limitations, vocational skills, and experience.

**3. Workers' Compensation— depression—increase since injury—non-expert testimony**

The Industrial Commission in a workers' compensation action had competent evidence before it in plaintiff's testimony to support a finding that plaintiff's depression had increased. Although it has been held that expert testimony is required to establish the cause of an injury in certain situations, the Commission here relied on plaintiff's testimony to support a finding that plaintiff's depression had increased, not in support of a causation finding.

**4. Workers' Compensation— calculation of compensation— hours worked before injury—credibility of evidence**

The Industrial Commission in a workers' compensation action correctly calculated plaintiff's compensation rate where defendant contended that plaintiff never reached 40 hours a week, but plaintiff testified that he worked five days a week, eight hours a day, and that he was often loaned out to another company owned by defendant-employer in order to keep him fully employed. The Commission found plaintiff's evidence unchallenged and more credible.

**WEBB v. POWER CIRCUIT, INC.**

[141 N.C. App. 507 (2000)]

Appeal by defendants from opinion and award entered 30 July 1999 and filed 3 August 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 October 2000.

*Frederick R. Stann for plaintiff-appellee.*

*Morris York Williams Surles & Barringer, LLP, by C. Michelle Sain and Kelly F. Miller, for defendants-appellants.*

WALKER, Judge.

On 7 November 1996, plaintiff alleges he injured his back while attempting to pick up a drop cord in the course of his employment with defendant Power Circuit, Inc. Plaintiff filed a workers' compensation claim which was denied by defendants. After a hearing, the deputy commissioner found that plaintiff had suffered a specific traumatic injury and awarded plaintiff temporary total disability compensation, medical expenses and attorney fees. Defendants appealed to the Full Commission (Commission) which affirmed the decision of the deputy commissioner.

The Full Commission's findings include, in pertinent part:

6. Prior to plaintiff's injury, he was in good physical health. Plaintiff did suffer from depression prior to the accident. This depression had been diagnosed by plaintiff's family physician and plaintiff had continuously received treatment since the diagnosis in 1985. Plaintiff was taking Prozac, an anti-depressant, at the time of the injury; however, plaintiff considered himself to be dealing with his depression and that it had stabilized and the Full Commission concurs in this assessment.

7. On November 7, 1996, plaintiff was scheduled to work for the defendant-employer at a residence. Plaintiff was to install several receptacles and a ceiling fan electrical box. Plaintiff was loading his truck with ladders and wire when Kenneth Stroupe, the owner of the business, beckoned plaintiff to come into the shop and get some nails. As plaintiff was getting a handful of nails, he spotted a hundred foot extension cord on the floor that he thought he might need at the job site. Plaintiff bent down and reached for the extension cord and as he was coming up, he felt an intense pain burst across his lower back. This constituted a specific traumatic incident of the work assigned and led to

inability to earn wages and is thus compensable under the Workers' Compensation Act.

[ . . . ]

9. Plaintiff indicated to Mr. Stroupe that he had hurt his back and he would go out on the job to see what he could do.

10. Plaintiff's pain increased while he was driving to the job site. At the job site, plaintiff was unable to install the receptacles because of his pain and attempted to install the ceiling fan box. Plaintiff went into the attic in order to begin the installation only he felt so much pain that he was unable to install the box. Plaintiff drove back to the shop and told Mr. Stroupe he could not work because of the pain. Mr. Stroupe expressed anger and indicated that plaintiff should take his tools off the truck. Plaintiff was unable to do this, so Mr. Stroupe removed the tools and placed them in the trunk of plaintiff's car.

. . .

14. Plaintiff contacted the Division of Vocational Rehabilitation of North Carolina and was accepted in the program. Plaintiff was sent to R.S. Humble, M.D.

15. Dr. Humble treated plaintiff for a period of three (3) months at the expense of the Division of Vocational Rehabilitation of North Carolina. Initially, plaintiff was diagnosed with a lumbar strain, but ultimately it was determined that plaintiff had a herniated disc at L4, L5 and a protruding disc at L5, S1. Dr. Humble thought these discs would not benefit from surgical intervention, but plaintiff is entitled to seek further medical advice and/or surgery with respect to his back injury.

16. Dr. Humble prescribed steroid medication and physical therapy. This conservative treatment was unsuccessful and Dr. Humble told plaintiff that there was nothing more than [sic] he could do for him. Dr. Humble released plaintiff not because plaintiff was cured but because there was nothing else Dr. Humble felt he could do for his patient. Plaintiff has not reached MMI and continues to have significant medical problems.

17. A Functional Capacity Evaluation was recommended and upon the evaluation having been taken, plaintiff was released with restrictions in March 1997. The restrictions and the continu-

WEBB v. POWER CIRCUIT, INC.

[141 N.C. App. 507 (2000)]

ing chronic pain preclude plaintiff from employment in the only work he is able to do for pay.

18. In the days following his injury, plaintiff had to spend from sixteen to eighteen hours a day lying down to relieve his severe pain. Asked to describe his pain level based upon a scale of one to ten where one is a pain you could easily ignore and ten is the most severe pain imaginable, plaintiff stated that on the day he went to Gaston Memorial Hospital his pain was between an eight and one-half and a nine and one-half. At the time of the hearing, plaintiff's daily pain levels were about three and one-half to four and one-half, but after any activity whatsoever, his pain would accelerate to between six and seven and he would have to lie down to relieve his pain.

. . .

20. Since the injury plaintiff can only stand for 45 minutes at one time before his pain becomes too great to tolerate. Plaintiff can sit for about one and one-half to two hours at a time. Plaintiff performs no chores around the boarding house where he lives, not even cleaning his room, as was required. After his injury plaintiff attempted to sweep his room one time but had to get someone else to finish it for him.

21. Plaintiff would like to return to work. He was happier when he was able to work and was working. However, plaintiff has not looked for work because he could not hold down a job due to his chronic and debilitating back pain.

22. Plaintiff's injury and subsequent pain are a direct and proximate result of the specific traumatic incident of November 7, 1996.

23. Plaintiff's pain and symptoms relating to depression have increased since the time of his injury. Plaintiff's depression makes it hard for him to deal with his job-caused chronic pain and his job-caused chronic pain exacerbates his depression. Plaintiff's job-caused chronic pain has made it impossible for him to be gainfully employed since November 6, 1996.

[1] Defendants first assign as error the Commission's finding that plaintiff met his initial burden of proving that he is disabled and thus entitled to compensation. "The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent

evidence." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000). This Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Id.*

In order to show eligibility for disability compensation, the plaintiff has the initial burden of proving the existence and extent of his disability. *See Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382 (1996). "Disability" is defined as an "incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (1999). A plaintiff may show such incapacity in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In determining if plaintiff has met this burden, the Commission must consider not only the plaintiff's physical limitations, but also his testimony as to his pain in determining the extent of incapacity to work and earn wages such pain might cause. *Matthews v. Petroleum Tank Service, Inc.*, 108 N.C. App. 259, 265, 423 S.E.2d 532, 535 (1992).

In the case at bar, plaintiff testified that he suffered severe pain as a result of his bending over and picking up the drop cord. He immediately reported this to his supervisor and soon thereafter had to cease work. He was unable to even remove his tools from the truck. On the recommendation of the Division of Vocational Rehabilitation, plaintiff was seen and treated by Dr. R.S. Humble over the next three months. Dr. Humble testified that plaintiff suffered from a herniated disc and a protruding disc in his back and that such an injury was consistent with plaintiff's complaints of pain. Furthermore, plaintiff testified that the pain has continued since the injury, that he cannot stand for more than forty-five minutes or sit for more than two hours, that he is unable to perform any of his previous physical activity and that he has become increasingly depressed as a

result of the accident. This testimony provides competent evidence to support the Commission's findings and conclusions that plaintiff met his initial burden of proving a work-related injury.

[2] Once the employee has shown a disability, the burden then shifts to the employer to "produce evidence that suitable jobs are available for the employee and that the employee is capable of getting one, taking the employee's physical and vocational limitations into account." *Franklin* at 206, 472 S.E.2d at 386. "A job is suitable if the employee is capable of performing the job, given her age, education, physical limitations, vocational skills, and experience." *Id.* "An employee is capable of getting a job if there is a reasonable likelihood that she would be hired if she diligently sought the job." *Id.*

Plaintiff testified that he has been engaged in manual labor all his life with only an eighth grade education. He testified that he would like to return to work, but that he has not looked for work because he could not keep a job as a result of his back pain. It was then incumbent on the defendant-employer to come forward with evidence that employment opportunities exist for plaintiff which he has not explored given his "age, education, physical limitations, vocational skills, and experience." Thus, we find defendants failed to meet their burden of establishing that "suitable jobs are available to plaintiff."

[3] Defendants next contend that there is no competent evidence to support the Commission's determination that plaintiff's depression increased after the accident. Defendants cite *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E.2d 389 (1980), in support of the proposition that "only an expert can give competent opinion evidence as to the cause of the injury." Defendants argue that because the Commission relied only on the plaintiff's testimony that his depression worsened after his injury, there is no competent evidence to support this finding.

In *Click*, our Supreme Court held that expert testimony is required to establish the cause of an injury in certain situations. In the case at bar, the Commission found that plaintiff's depression had "increased since the time of the accident" and that "[p]laintiff's depression makes it hard for him to deal with his job-caused chronic pain and his job-caused chronic pain exacerbates his depression." Thus, the Commission properly relied on plaintiff's testimony to support a finding that his depression has increased, not in support of a finding of causation.

DISCIPLINARY HEARING COMM'N, N.C. STATE BAR v. FRAZIER

[141 N.C. App. 514 (2000)]

**[4]** The defendants' final assignment of error is that the Commission incorrectly calculated plaintiff's compensation rate based on the hours he worked prior to the injury. The Commission found that plaintiff worked a 40 hour work week; however, defendants assert that the Form 22 showed that plaintiff only worked 14 to 15 hours per week initially with his hours increasing over time, but never reaching 40 hours per week. Plaintiff testified that he worked five days a week, eight hours a day, and that he was often "loaned out" to another company owned by the defendant-employer in order to keep him fully employed. The Commission found this evidence was "unchallenged" and more credible. The opinion and award of the Commission is

Affirmed.

Judges McGEE and HORTON concur.