***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** RULINGS ON EVIDENTIARY MATTERS
After the oral arguments before the Full Commission, defendants made a Motion to Vacate Deputy Commissioner Rideout's Opinion and Award and Remand for Full Adjudication. Plaintiff filed a response to defendants' Motion. Defendants argue that because Deputy *Page 2 
Commissioner Rideout did not cite the deposition testimony of Janet Gordon in his Opinion and Award, he did not consider all the evidence in this case.
The depositions of both Janet Gordon and Vanessa Johnson, medical case managers, were received into evidence at the hearing before the Deputy Commissioner. The Court of Appeals has held that, upon review of the Deputy Commissioner's Opinion and Award, the Full Commission may adopt, modify, or reject the Deputy Commissioner's findings and is free to make its own determinations regarding the weight and credibility of the evidence. Craver v. Dixie Furniture Co.,115 N.C. App 570, 447 S.E.2d 789 (1994). Thus, the Full Commission will review all the evidence in this case de novo and make new Findings of Fact and Conclusions of Law. Defendants' motion is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff sustained an admittedly compensable injury by accident to his left hand on September 28, 2005.
2. Defendants filed a Form 60 dated October 12, 2005, admitting plaintiff's right to compensation, stating "Employee performing inspection of tire with left hand, tire exploded off chuck, left ring finger fracture hematoma, and nail bed injury."
3. Plaintiff's average weekly wage is $1,407.79, yielding the maximum compensation rate for the year 2005 in the amount of $704.00. *Page 3 
4. In October 2005, plaintiff returned to work with the defendant-employer at reduced wages and continued working at reduced wages until he stopped work on approximately March 1, 2006.
5. On September 28, 2005, the parties were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
6. On September 28, 2005, an employer-employee relationship existed between plaintiff and defendant-employer.
7. On September 28, 2005, defendant-employer employed three or more employees.
8. Defendant-employer was self-insured and Gates McDonald was the third party administrator.
9. The following exhibits were stipulated into evidence at the Deputy Commissioner's hearing:
 a. Stipulated Exhibit #1: Pre Trial Agreement
 b. Stipulated Exhibit #2: Defendants' Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents
 c. Stipulated Exhibit #3: Defendants' Amended Responses to Plaintiff's First (sic Second) Set of Interrogatories
 d. Stipulated Exhibit #4: Medical Records
 e. Stipulated Exhibit #5: Industrial Commission Forms
 f. Stipulated Exhibit #6: Medical Case Management Documents
10. The issues before the Full Commission are whether the job of tire inspector is suitable employment under the Act and whether plaintiff is entitled to temporary partial disability compensation. *Page 4 
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 58 years old. He began work with defendant-employer in 1972.
2. At the time of plaintiff's compensable injury by accident on September 28, 2005, plaintiff was employed as a tire inspector with defendant-employer. The physical requirements of the job of tire inspector with defendant-employer are strenuous and required lifting, handling, inspecting, turning, pulling and spinning tires that weighed between 40 and 50 pounds. The job required inspection of between 500 and 700 tires per day.
3. On September 28, 2005, a tire blew off the rim and blew plaintiff's hand into the metal housing above it. Immediately after the accident, plaintiff's entire left hand was bloodied and scratched and he had an obvious broken ring finger.
4. Plaintiff had never sustained in injury to his left hand or been treated by a physician in connection for a left hand condition prior to his injury by accident on September 28, 2005.
5. Defendants filed a Form 19 on the date of accident indicating plaintiff's version of events and plaintiff's contention that he broke one finger and damaged two others.
6. On September 28, 2005, defendants sent plaintiff to OccMed, where he was referred to an orthopedic surgeon. *Page 5 
7. On September 29, 2005, plaintiff saw Dr. Pressley Gilbert. Dr. Gilbert's impression was a closed fracture of the distal phalanx of the left ring finger, with nail bed injury and contusion to the left long and ring fingers.
8. Also on September 29, 2005, plaintiff saw Dr. David Baker at OrthoCarolina. Dr. Baker noted the fracture of the ring finger and swelling of the index and long fingers. Dr. Baker performed a closed manipulation of the distal phalanx and applied a splint. He released plaintiff to return to work on October 3, 2005, with restrictions of no work involving the use of the left hand.
9. On October 11, 2005, plaintiff saw Dr. Baker for concerns about the PIP joints of the index and long fingers. Dr. Baker changed the splint for the ring finger and released plaintiff to return to work with restrictions of no lifting, pushing or pulling greater than one pound with the left hand. Defendants accommodated these restrictions and placed plaintiff in a separate light duty position.
10. Plaintiff next saw Dr. Baker on November 15, 2005, for continued swelling around the PIP joint of the ring finger and more diffuse stiffness and soreness in other fingers. Dr. Baker authorized plaintiff to return to work with restrictions of no lifting, pushing or pulling greater than five pounds with the left hand. Plaintiff continued to work light duty in a different position with defendant-employer.
11. On December 15, 2005, plaintiff saw Dr. Baker for a calcific density. Dr. Baker did not find any evidence that plaintiff was experiencing symptoms with respect to this condition, but he had a question because of the appearance on x-ray. Dr. Baker instructed plaintiff to continue with his prior restrictions until January 2, 2006. Dr. Baker did not feel that plaintiff could return to work as a tire inspector on December 15, 2005, but anticipated that his *Page 6 
condition would improve to such an extent that he could begin returning to it beginning January 2, 2006. By January 2, 2006, Dr. Baker felt plaintiff could return to his previous job on a part-time basis for four hours a day, increasing to six hours a day on January 9, 2006, and eight hours a day by January 16, 2006. Dr. Baker did not see plaintiff again prior to his attempt to return to part-time work on January 2, 2006.
12. When plaintiff returned to work as a tire inspector on a part-time basis on January 2, 2006, he worked the recommended number of hours and then worked the remaining hours in his light duty position. Plaintiff's hand did not respond favorably to his attempt to return to full-duty work and he began to have increased pain and swelling in his left hand. Plaintiff spoke to his foreman and to Tracy Boudreau, the safety director with defendant-employer, about his problems, but he was informed that he either had to perform his regular job as a tire inspector or go out on disability under defendant-employer's sickness and accident policy.
13. Eventually, plaintiff was approached by Paul Moses, his supervisor, in late January or early February 2006. Mr. Moses requested John Robinson to join the meeting. Mr. Robinson was a union division representative at this time. Mr. Moses instructed plaintiff that he either had to return to his regular job as a tire inspector or leave work. Plaintiff continued to complain of pain and swelling in his hand caused by his work. Mr. Moses informed plaintiff and Mr. Robinson that they could talk to Tracy Boudreau. Mr. Boudreau also stated that plaintiff either had to return to work as a tire inspector or go out under the sickness and accident policy.
14. Defendant-employer's sickness and accident benefits policy is essentially a short-term disability policy and is available only for employees with non-work related injuries. The sickness and accident benefits available to employees of defendant-employer at the time of plaintiff's conversation with Mr. Moses were $385.00 per week, payable for 52 weeks. The *Page 7 
Hartford was the insurance carrier providing the sickness and accident benefits, so plaintiff called the carrier to inquire as to his eligibility for the benefits, but his claim was denied because he had sustained an on-the-job injury.
15. Following plaintiff's conversation with Mr. Moses, Mr. Boudreau, and The Hartford, plaintiff's options were to return to his job as a tire inspector, retire, or be terminated. Plaintiff could not return to his job as a tire inspector because of the continued pain and swelling in his left hand and he did not want to be terminated, so plaintiff chose to retire. His retirement application was submitted to defendant-employer on February 9, 2006.
16. Plaintiff was dissatisfied with Dr. Baker because he was returned to work as a tire inspector and he felt that Dr. Baker did not appreciate his continued pain and swelling in his left hand. Plaintiff attempted to obtain a second opinion through defendants, but he was informed by Mr. Boudreau that he could not get another opinion. Plaintiff then scheduled a second opinion on his own with Dr. John Gaul through his group health coverage. Dr. Gaul works with Dr. Baker at OrthoCarolina. This second opinion was scheduled for February 15, 2006, the day after plaintiff was scheduled to see Dr. Baker.
17. On February 14, 2006, plaintiff saw Dr. Baker, stating that he began having more significant problems with his left hand about three weeks after he started the graduated program returning him to work without restrictions. He also told Dr. Baker that he was scheduled to see another physician the following day. Dr. Baker was of the opinion that the physician-patient relationship was not a healthy one and he discharged plaintiff from his care. Dr. Baker did not believe that plaintiff was at maximum medical improvement or that a rating was appropriate because of the significant symptoms that plaintiff was still experiencing. *Page 8 
18. When Dr. Baker released plaintiff on February 14, 2006, he did not address the issue of restrictions in his office note. At a later time, however, Vanessa Johnson, the medical case manager hired by defendants, requested Dr. Baker to address those issues. Dr. Baker then generated a form that authorized plaintiff to return to work without restrictions.
19. On February 15, 2006, plaintiff began treatment with Dr. Gaul. Plaintiff complained primarily of soreness in the dorsal hand area, which Dr. Gaul described as broad and diffuse over the back of his left hand. Dr. Gaul did not have the February 14, 2006 note from Dr. Baker and assumed that plaintiff was still under restrictions. Dr. Gaul did not address the issue of restrictions in his February 15, 2006 note because he was not asked to do so and he did not think that it was relevant because plaintiff was not working.
20. On May 3, 2006, Dr. Gaul completed a form indicating that plaintiff was unable to perform his regular job as a tire inspector and released plaintiff to return to work with restrictions of no lifting greater than ten pounds with his left hand.
21. On May 23, 2006, plaintiff saw Dr. Baker at the request of defendants. Dr. Baker was uncertain who scheduled the appointment or why the appointment was scheduled, but he refused to treat plaintiff.
22. On October 18, 2006, plaintiff saw Dr. Gaul for the last time for continued complaints of numbness and paresthesias in the hand. Janet Gordon, medical case manager, attended the appointment with plaintiff. Dr. Gaul was of the opinion that plaintiff was at maximum medical improvement and assigned a 15% impairment of the left hand, approximately half of which was for the stiffness to the ring finger and half of which was for stiffness to the index and long fingers. Dr. Gaul's rating did not take into consideration the calcific density, but *Page 9 
addressed only those injuries that he felt were proximately caused by plaintiff's injury by accident.
23. Dr. Gaul released plaintiff on October 18, 2006 with restrictions of no lifting greater than 20 pounds on a frequent basis and to avoid impact tools of the left hand, heavy hammering, and similar activities. Dr. Gaul was of the opinion that plaintiff had at least these restrictions throughout his treatment, from February 15, 2006 to October 18, 2006.
24. Plaintiff received temporary partial disability benefits from October 11, 2005, the date he returned to work in a light duty position, until the day he stopped work and submitted his retirement application. Defendants paid plaintiff temporary partial disability benefits until February 19, 2006.
25. As a result of his compensable injury, plaintiff had work restrictions from his date of injury through the date of the Deputy Commissioner's hearing. Dr. Gaul testified that plaintiff had at least restrictions of no lifting greater than 20 pounds on a frequent basis and to avoid impact tools of the left hand, heavy hammering, and similar activities throughout his treatment, from February 15, 2006 to October 18, 2006. The Commission gives greater weight to the testimony of Dr. Gaul than to Dr. Baker and finds that plaintiff was under work restrictions from February 15, 2006 to October 18, 2006.
26. The greater weight of the evidence shows that plaintiff's work restrictions were attributable to his compensable injury and precluded him from returning to work as a tire inspector with defendants. Defendants failed to offer plaintiff suitable employment when he was released to return to work with restrictions.
27. After plaintiff left employment with defendant-employer on February 19, 2006, he began to look for work. Plaintiff wanted to find work with health insurance benefits for his wife. *Page 10 
Plaintiff's wife suffers from a bipolar illness and incurs significant medical expenses as a result of this condition. The cost to plaintiff of the health insurance offered by defendants through their retirement plan was over $700.00 a month, which plaintiff could not afford. Plaintiff had difficulty finding employment due to his age, his limited work experience with defendant-employer, and his work restrictions. The Commission finds plaintiff made a reasonable job search, which was subsequently successful.
28. On August 25, 2006, plaintiff accepted a job as a teacher's assistant with the Gaston County school system that was within the restrictions imposed by Dr. Gaul. Plaintiff has been employed in that capacity since that time. In 2006, plaintiff earned income in the amount of $7,404.78 with the Gaston County school system. In 2007, he earned income in the amount of $12,202.40. Other than the wages he earned as a teacher's assistant with the Gaston County school system, plaintiff has not earned any wages since he stopped work with defendants. From August 25, 2006 through the end of 2007, plaintiff's average earnings as a teacher's assistant with the Gaston County school system were $277.83 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 28, 2005, plaintiff sustained an admittedly compensable injury to his left hand arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. A suitable job is one the employee is capable of performing, given his age, education, physical limitations, experience and vocational skills. Webb v. Power Circuit, Inc., *Page 11 141 N.C. App. 507, 540 S.E.2d 790 (2000), cert. denied,353 N.C. 398, 548 S.E.2d 159 (2001). An unsuccessful return to work effort under N.C. Gen. Stat. § 97-32.1 is not sufficient to rebut the presumption of continuing disability.Stamey v. North Carolina Self-Insurance Guar. Ass'n,131 N.C. App. 662, 507 S.E.2d 596 (1998).
3. The job of tire inspector that plaintiff attempted to return to on January 2, 2006 did not constitute suitable employment under the Act, as it consistently required plaintiff to perform tasks outside of his restrictions. Due to his physical inability to perform his full-time job, plaintiff left work on February 19, 2006. From February 15, 2006 to October 18, 2006, Dr. Gaul assigned plaintiff work restrictions of no lifting greater than 20 pounds on a frequent basis and to avoid impact tools of the left hand, heavy hammering, and similar activities. After February 19, 2006, plaintiff showed that he continued to be partially disabled by producing evidence that after a reasonable job search, he obtained other employment at wages less than those earned prior to the compensable injury. Larramore v. Richardson SportsLtd. Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000),aff'd per curiam, 353 N.C. 520, 546 S.E.2d 87 (2001).
4. As a result of the September 28, 2005 compensable injury by accident, plaintiff is entitled to receive temporary total disability compensation at the rate of $704.00 per week beginning February 19, 2006 and continuing until August 25, 2006. N.C. Gen. Stat. §§ 97-29.
5. As the result of his compensable injury by accident on September 28, 2005, plaintiff was temporarily partially disabled and entitled to payment by defendants of temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn beginning August 25, 2006, subject to the maximum compensation rate for 2005, for *Page 12 
a maximum of 300 weeks from the date of injury or until he earns the same or greater wages as he did before his compensable injury. N.C. Gen. Stat. § 97-30.
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation at the rate of $704.00 per week beginning February 19, 2006 and continuing until August 25, 2006. The amounts that have accrued shall be paid to plaintiff in a lump sum.
2. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages plaintiff earned prior to the injury by accident and the diminished wages he was able to earn, beginning August 25, 2006, subject to the maximum compensation rate for 2005, for a maximum of 300 weeks from the date of injury or until he earns the same or greater wages as he did before his compensable injury. The amounts that have accrued shall be paid to plaintiff in a lump sum.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to *Page 13 
plaintiff's counsel. The amounts that have accrued shall be paid to plaintiff's counsel in a lump sum. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
5. Defendants shall pay the costs.
This the 3rd day of March, 2009.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1