HUNTER, JR., Robert N., Judge.
William Porter ("Plaintiff") was injured at his work place on 22 September 2009. Plaintiff sustained a fractured left ankle and was later diagnosed with an extensive left lower extremity deep venous thrombosis. As a result, Plaintiff received weekly temporary disability benefits from Bearcat Inc. and AmGUARD Insurance Company ("Defendants"). On 16 October 2014 the Full Industrial Commission ("the Commission") entered an Opinion and Award denying Plaintiff's claim for ongoing disability compensation. Plaintiff contends the Commission erred in finding and concluding Plaintiff was not disabled, in finding and concluding Plaintiff failed to comply with vocational rehabilitation, and in concluding Plaintiff is no longer entitled to vocational rehabilitation. After consideration, we affirm the Opinion and Award of the Commission.
I. Factual & Procedural History
Plaintiff, a sixty-four year old man with a GED, was employed as an attendant at Ride With Pride ("the car wash"). Plaintiff operated the car wash, conducted general repairs, and mowed the grass.
On 22 September 2009, while mowing the grass at the car wash, Plaintiff slipped and fell on an embankment and fractured his ankle. At the time of Plaintiff's injury, the car wash was owned by Bearcat Inc. and the insurance carrier was AmGUARD Insurance Company. Beginning on 23 September 2009, Defendants paid Plaintiff $254.99 in weekly temporary disability benefits.
On 23 September 2009, Dr. Craig, an orthopedic surgeon, performed an open reduction and internal fixation of Plaintiff's distal fibula. On 19 October 2009, Plaintiff followed up with Dr. Craig, reporting pain in his left groin area and a swollen left leg. Dr. Craig ordered a Doppler and ultrasound study of Plaintiff's left leg. The following day, Plaintiff reported to Dr. Craig that blisters had formed on his leg and he still had pain and swelling. Thereafter, Plaintiff was admitted to the hospital for evaluation.
Dr. Bradley Thomason, a vascular surgeon, diagnosed Plaintiff with acute deep venous thrombosis, a blood clot in the deep veins of the leg, with evidence of chronic venous insufficiency. Dr. Thomason explained that Plaintiff had an extensive clot which extended from his leg into his abdomen. Dr. Thomason conducted a thrombectomy, where he removed the clot through a catheter inserted into Plaintiff's ankle. During the surgery, Dr. Thomason also inserted a vena cava filter above the clot to prevent additional clots from floating from the legs to the heart and the lungs. After the surgery Plaintiff was released from the hospital.
On 2 November 2009, Dr. Craig released Plaintiff to begin physical therapy and bear weight on his left leg. Dr. Craig instructed Plaintiff to remain out of work pending his next appointment. On 30 November 2009, Dr. Thomason reported that Plaintiff was "doing relatively well" and recommended Plaintiff use elastic compression hose long term to reduce the risk of venous leg ulcers. On 5 January 2010, Dr. Craig reported Plaintiff's ankle was healed. Plaintiff was cleared to wear regular shoes and return to work for six hours a day, but was restricted from climbing. However, Dr. Craig noted Plaintiff had some mild pain, a little numbness, and a stiff ankle, and thus, recommended Plaintiff continue physical therapy.
On 17 February 2010, Dr. Craig released Plaintiff to work regular duty. On 18 February 2010, Plaintiff ceased receiving his weekly temporary disability benefits. Plaintiff returned to work in his pre-injury position at the car wash and earned his pre-injury pay.
On 2 November 2010, Plaintiff returned to Dr. Craig, complaining of left foot pain. On 9 February 2011, Plaintiff reported the pain as worse, rating it as a four on a scale of ten. Plaintiff explained that it was difficult to work. Dr. Craig provided Plaintiff with a note to keep him out of work and referred him to Dr. Biggerstaff, an orthopedic specialist in foot and ankle surgery. On 9 February 2011, Defendant reinstated Plaintiff's temporary total disability benefits of $254.99 per week.
On 28 March 2011, Plaintiff met with Dr. Biggerstaff, complaining of sharp, throbbing, and aching pain, as well as numbness, tingling and weakness. Plaintiff explained the pain was worsened by standing, walking, and bending. Dr. Biggerstaff diagnosed: "residual left lower extremity pain and numbness after [Plaintiff's] ankle surgery." Dr. Biggerstaff recommended Plaintiff see Dr. Mitchell Isaac, a neurologist, to evaluate the source of the numbness.
On 20 April 2011, Plaintiff saw Dr. Isaac and explained that since the surgery, he had persistent left ankle pain, pain to his heels, and pain under his toes. Plaintiff also described numbness in the ball of his foot, top of his toe, the plantar aspect of his first through third toes, and burning on the bottom of his foot. On 7 June 2011, Dr. Isaac concluded Plaintiff had distal tibial neuropathy, or tarsal tunnel syndrome, and gave him samples for Cymbalta to relieve the nerve pain.
On 6 September 2011, Plaintiff returned to see Dr. Biggerstaff complaining of sharp and constant pain. Plaintiff had attended physical therapy between July and September, but after reviewing the physical therapy notes, Dr. Biggerstaff opined: "it doesn't sound like he had a whole lot of improvement." Dr. Biggerstaff determined Plaintiff had possible tarsal tunnel syndrome which is the product of the nerve getting pressed or irritated behind the ankle bone and causing numbness or tingling. Dr. Biggerstaff did not believe the tarsal tunnel syndrome to be the result of the surgery and recommended Plaintiff try Lidoderm patches to numb the pain. At this time, Dr. Biggerstaff determined Plaintiff was unable to work, as it was not safe for Plaintiff to climb a ladder. On 18 October 2011, Plaintiff reported to Dr. Biggerstaff that although the Lidoderm patches were helping with the pain, he was still in pain and unable to work.
On 9 January 2012, Plaintiff saw Dr. W. Hodges Davis, an orthopedic surgeon. Plaintiff and Dr. Davis discussed the possibility of surgery, but concluded the risks outweighed the benefits. Dr. Davis attached a 30 percent permanent impairment rating on Plaintiff's left foot. In a written report dated 9 January 2012, Dr. Davis noted Plaintiff was "not employable." However, at his deposition, Dr. Davis testified Plaintiff was able to work at a "sit-down job of some sort." Dr. Davis testified that he would defer to Dr. Biggerstaff as to Plaintiff's work ability.
On 28 February 2012, Plaintiff visited Dr. Biggerstaff for the final time, after undergoing a Functional Capacity Evaluation ("FCE"). At his deposition, Dr. Biggerstaff explained:
At that point, basically, again, we felt that I didn't have anything else to offer him, so I put him at his maximum medical improvement based off the FCE that said he had no lifting over 35 pounds, no climbing ladders, and that he's not able to work in the cold.
I basically said that he could do sit-down work without any restrictions. No pushing more than 30 pounds, no pulling more than 18 pounds. He could occasionally climb stairs and squat. At that point, I put his PPI rating at 25 percent due to his chronic pain, swelling, numbness, and cold tolerance.
In June 2012, Defendants assigned vocational case manager Marion McKenna CEAS II, CDMS ("Counselor McKenna") of Case Management Solutions to assist Plaintiff in his job-search efforts. On 12 September 2012, after meeting with Plaintiff on several occasions, Counselor McKenna drafted a Job Placement Plan for Plaintiff, which outlined his physical capabilities, job goals, and responsibilities, as well as Counselor McKenna's responsibilities.
On 15 February 2013, Defendants filed a Motion to Compel Cooperation with Vocational Rehabilitation, requesting the Commission enter an Order mandating Plaintiff's cooperation with vocational rehabilitation. The Motion alleged Plaintiff had failed to comply with the vocational rehabilitation services initiated by Defendants. On 3 March 2013, the Commission issued an Order compelling Plaintiff to cooperate fully and in good faith with Defendants' vocational rehabilitation efforts. The Order specifically directed Plaintiff to "make every effort to attend each and every vocational rehabilitation appointment" and also follow through with his vocational counselor's recommendations "including, but not limited to, the completion of job logs and attendance of a computer class."
On 24 April 2013, the Defendants filed a Form 24 requesting that Plaintiff's compensation be suspended based upon Plaintiff's alleged failure to cooperate with vocational rehabilitation efforts. Defendants alleged the following: "Plaintiff is in direct violation of the Order of this Commission and his weekly indemnity benefits should be terminated until such time that he cooperates fully, and in good faith, with vocational rehabilitation[.]" On 31 May 2013, Special Deputy Commissioner Michael R. Kelly entered an order allowing Defendants' Form 24 application to suspend benefits, effective 26 April 2013. Subsequently, on 28 June 2013, Plaintiff filed a Form 33 requesting reconsideration of the prior order. On 11 September 2013, a hearing was held before Deputy Commissioner Phillip Holmes to address issues raised by the Form 33 and a medical motion filed on 21 June 2013. On 4 March 2013, Deputy Commissioner Holmes awarded limited ongoing medical compensation but did not award ongoing disability compensation. Plaintiff appealed to the Commission, who heard this matter on 12 August 2014. On 16 October 2013, the Commission entered an Opinion and Award denying Plaintiff's claim for ongoing disability compensation. Plaintiff filed a notice of appeal to this Court on 14 November 2014.
II. Jurisdiction
This Court has jurisdiction over appeals from the Industrial Commission pursuant to N.C. Gen.Stat. § 7A-29(a) (2014).
III. Standard of Review
" 'Appellate review of an order and award of the Industrial Commission is limited to a determination of whether the findings of the Commission are supported by the evidence and whether the findings in turn support the legal conclusions of the Commission." ' Allred v. Exceptional Landscapes, Inc.,--- N.C.App. ----, ----, 743 S.E.2d 48, 51 (2013) (quoting Simon v. Triangle Materials, Inc.,106 N.C.App. 39, 41, 415 S.E.2d 105, 106 (1992) ). "The Commission's findings of fact are conclusive on appeal if supported by competent evidence 'notwithstanding evidence that might support a contrary finding.' " Reaves v. Indus. Pump Serv.,195 N.C.App. 31, 34, 671 S.E.2d 14, 17 (2009) (quoting Hobbs v. Clean Control Corp.,154 N.C.App. 433, 435, 571 S.E.2d 860, 862 (2002) ).
IV. Analysis
The issue on appeal is whether the Full Commission erred in denying Plaintiff's ongoing disability compensation. Plaintiff contends the Commission erred in finding and concluding Plaintiff was not disabled, in finding and concluding Plaintiff failed to comply with vocational rehabilitation, and in concluding Plaintiff is no longer entitled to vocational rehabilitation.
Assignment of Error # 1
Plaintiff's first assignment of error is that the Commission erred by finding and concluding that Plaintiff has not been disabled since 26 April 2013 as a result of his compensable injury. Plaintiff argues that he met his burden of demonstrating incapacity to earn wages, as required by law.
"In order to show eligibility for disability compensation, the plaintiff has the initial burden of proving the existence and extent of his disability." Webb v. Power Circuit, Inc.,141 N.C.App. 507, 512, 540 S.E.2d 790, 793 (2000). "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen.Stat. § 97-2(9) (2014).
In order to prove compensable disability, our Supreme Court requires a plaintiff to prove three things:
(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury."
Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). To prove disability, a Plaintiff must establish all three Hilliardelements. Medlin v. Weaver Cooke Constr., LLC,367 N.C. 414, 421, 760 S.E.2d 732, 737 (2014).
A Plaintiff may show incapacity sufficient to satisfy the first two elements of Hilliardin one of four ways: (1) medical evidence that he is physically or mentally incapable, as result of the injury, of work in any capacity; (2) evidence that he is capable of some work but has been unsuccessful in obtaining employment; (3) evidence that he is capable of some work but it would be futile based on his age, inexperience, or lack of education; (4) evidence that he has obtained other employment at a lower wage than previously earned. See Russell v. Lowes Prod. Distrib.,108 N.C.App. 762, 765, 425 S.E.2d 454, 457 (1993). "These are known as the Russellfactors, and a plaintiff need only produce evidence of one Russellfactor to satisfy the first two prongs of Hilliard ." Fields v. H & E Equipment Servs., LLC, et al,COA 14-1094 (filed 21 April 2015).
A. Medical Evidence
Plaintiff contends he met his burden of demonstrating incapacity to earn wages. Specifically, Plaintiff claims he produced medical evidence that he is physically or mentally incapable, as a result of the injury, of work in any capacity. The Commission's conclusion of law # 4 provides in relevant part:
Plaintiff has failed to meet his burden of demonstrating incapacity to earn wages. First, Plaintiff has not produced medical evidence that he is either physically or mentally incapable of any work due to his work related injury.... Rather Plaintiff is capable of some work, within his restrictions of no climbing ladders, no work in the cold, and no lifting greater than 35 pounds.
Here, Plaintiff contends he complied with the first prong of Russellby producing medical evidence that proves he is incapable of any work. In support of conclusion of law # 4, the Commission made finding of fact # 9:
Plaintiff underwent conservative treatment with Dr. Biggerstaff, including a Functional Capacity Evaluation. On 29 February 2012, Plaintiff was released by Dr. Biggerstaff to return to work with restrictions of no climbing ladders, no work in the cold, and no lifting greater than 35 pounds.
Plaintiff does not argue in his brief that finding of fact # 9 is unsupported by evidence in the record. Rather, Plaintiff points to other evidence in the record to demonstrate his compliance with the first prong of Russell.Specifically, Plaintiff argues he produced medical evidence of his ongoing impairment and inability to work through the opinions of Dr. Davis and Dr. Isaac. Dr. Davis testified at his deposition that it would be hard for him to form an opinion as to the reasonableness of Dr. Biggerstaff's work restrictions because he had not examined Plaintiff in a year. Dr. Davis stated that he would defer to Dr. Biggerstaff as to Plaintiff's work ability. Dr. Isaac opined that in the absence of pain management, Plaintiff's pain may limit his functioning. However, Dr. Isaac stated he did not have an opinion as to what limitations or restrictions of functions Plaintiff sustained, explaining "I would leave that to a functional capacity exam and other assessments like that." In sum, neither Dr. Davis nor Dr. Isaac provided evidence of Plaintiff's impairment and inability to do work.
Plaintiff contends that under the first prong of Russell,Plaintiff's testimony as to his pain may support a conclusion of disability. This Court has held that in determining whether a plaintiff met his burden of proving disability, "the Commission must consider not only the plaintiff's physical limitations, but also his testimony as to his pain in determining the extent of incapacity to work and earn wages[.]" Webb,141 N.C.App. at 512, 540 S.E.2d at 793 (citation omitted).
At the hearing on 11 September 2013, Plaintiff described a tennis-ball feeling in the bottom of his foot, numbness of his toes, and a shooting pain in his left heel that was persistent in cold weather. However, Plaintiff did not testify that his pain was so severe he was incapable of any work. Additionally, Plaintiff does not point to any medical evidence proving his incapacity, as a result of his injury, of earning the same wages he had earned prior to his injury in any employment. The evidence shows that on 29 February 2012, Dr. Biggerstaff released Plaintiff to work, pursuant to the following restrictions: no climbing ladders, no work in the cold, and no lifting greater than 35 pounds. Additionally, neither Dr. Davis nor Dr. Isaac opined that Plaintiff was unable to work in any capacity. "[This] Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Id.at 512, 540 S.E.2d at 793 (citation, quotation marks, and brackets omitted). Here, there was competent evidence supporting the finding that Plaintiff did not meet his burden of demonstrating incapacity to earn wages under the first prong of Russell.
B. Suitable Employment
Plaintiff contends the Commission committed reversible error in failing to find that Plaintiff was incapable of performing suitable employment due to his compensable injury. However, this argument is misplaced. Under the Workers' Compensation Act, Plaintiff has the initial burden of proving the existence and extent of his disability. To show a compensable disability, Plaintiff must prove all three Hilliardfactors, none of which include evidence on the availability of suitable jobs. This Court has held that "[o]nce the employee has shown a disability, the burden then shifts to the employer to produce evidence that suitable jobs are available for the employee and that the employee is capable of getting one, taking the employee's physical and vocational limitations into account." Id.at 513, 540 S.E.2d at 794 (citation and quotation marks omitted). Plaintiff did not overcome his initial burden of providing evidence of the existence and extent of his injury.
Assignment of Error # 2
Plaintiff's second assignment of error is that the Commission erred by finding and concluding that Plaintiff failed to reasonably comply with vocational rehabilitation. Plaintiff specifically challenges the portion of conclusion of law # 4 which provides Plaintiff "has been uncooperative with Defendants' vocational rehabilitation efforts and has not made a reasonable job search." Plaintiff contends he did not refuse to cooperate with vocational services in violation of N.C. Gen. Stat § 97-32.2(g), which provides that an employee's refusal to cooperate with vocational rehabilitation services "when ordered by the Industrial Commission shall bar the employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension[.]" N.C. Gen. Stat § 97-32.2(g) (2014). Plaintiff was ordered by the Industrial Commission to comply with Defendants' rehabilitation efforts on 8 March 2013. The procedural history of Plaintiff's involvement in vocational rehabilitation is laid out in the following findings of the Commission:
10. In June 2012, Defendants assigned vocational case manager Marion McKenna, MA, CEAS II, CDMS (hereinafter "Counselor McKenna), to assist Plaintiff with his efforts to find employment.
11. On a consistent basis, Plaintiff did not follow through with recommendations made by Counselor McKenna.
12. Plaintiff failed to pursue any of the job leads, at least thirty-two in all, that Counselor McKenna provided to him over a timeframe of several months. In fact, Plaintiff failed to complete a single employment application for any of the jobs Counselor McKenna recommended.
13. Over a period of months, Plaintiff failed to conduct an independent job search. For seven months, Plaintiff failed to complete weekly job logs as he was instructed to do by Counselor McKenna. When he finally did submit a job log on 15 February 2013, it merely contained available positions, not jobs for which Plaintiff had actually applied. The logs listed jobs for which Plaintiff was clearly unqualified and for which he had no reasonable expectation of being hired. These jobs included positions such as a dental assistant, a nail tech, and a hair stylist.
14. Plaintiff failed to complete a computer course that Counselor McKenna instructed him to attend on multiple occasions. The computer class was to enhance and modernize Plaintiff's skills and build upon his experience as a bookkeeper in the Army. Plaintiff attended at least one day of the course, and possibly a few others on a sporadic basis, in the fall of 2012. But Plaintiff did not attend any other of several computer courses recommended by Counselor McKenna in 2013.
15. Plaintiff missed multiple vocational meetings and could not be reached by Counselor McKenna in order to schedule the meetings.
16. On 8 March 2013, the Industrial Commission entered an Order compelling Plaintiff to cooperate fully with Defendants' vocational rehabilitation efforts by attending vocational meeting appointments, complying with Counselor McKenna's recommendations, completing computer training, and completing job search logs. Despite this Order, Plaintiff continued to be uncooperative with vocational rehabilitation efforts in that he failed to attend a computer course, apply for any jobs, or attend vocational meetings.
17. As a result of Plaintiff's failure to abide by the 8 March 2013 Order, Defendants filed a Form 24 Application to Suspend Benefits. After a telephonic hearing, the Industrial Commission entered an Administrative Decision and Order on 31 May 2013 allowing the suspension, effective 26 April 2013, of weekly benefits due to Plaintiff's continued failure to cooperate with vocational rehabilitation.
The Commission's findings of fact # 10-17 support the conclusion of law # 4 which provides "Plaintiff has been uncooperative with Defendant's vocational rehabilitation efforts and has not made a reasonable job search." Plaintiff contends he did not violate N.C. Gen.Stat. § 97-32.2(g) because he complied with vocational rehabilitation services following the Commission's 8 March 2013 Order. Therefore, Plaintiff appears to only challenge the Commission's finding of fact # 16 which in relevant part states: "Despite this [8 March 2013] Order, Plaintiff continued to be uncooperative with vocational rehabilitation efforts in that he failed to attend a computer course, apply for any jobs, or attend vocational meetings."
"The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there be evidence to support a contrary finding." Hilliard,305 N.C. at 595, 290 S.E.2d at 684 (citations omitted). Here, competent evidence was provided that Plaintiff failed to attend a computer course, apply for jobs, or attend vocational meetings. On 14 March 2013, Counselor McKenna met with Plaintiff and reported the following: Plaintiff had registered for a computer class that would start 28 March 2013 and Plaintiff continued to apply for positions that were either outside of his qualifications or outside his current restrictions. Counselor McKenna provided Plaintiff a job lead for an Insurance Sales Representative and directed Plaintiff to Lowe's website to apply for an open dispatcher position. On 10 April 2013, Counselor McKenna met again with Plaintiff and reported that Plaintiff was applying for openings that he was not qualified for in order to complete his required job logs and also, Plaintiff hadn't returned to a computer class since becoming ill on 18 March 2013. Counselor McKenna provided Plaintiff with four job leads. On 23 April 2013, Plaintiff failed to attend a scheduled meeting with Counselor McKenna because, as Counselor McKenna later learned, Plaintiff was hospitalized the prior day and was still in a significant amount of pain. Counselor McKenna also reported Plaintiff never attended his computer class on 17 April 2013. On 6 May 2013, Counselor McKenna reported Plaintiff failed to attend another scheduled meeting although she had left him two prior messages. Counselor McKenna testified that throughout the time she worked with Plaintiff, he did not follow up on one of the thirty-two job leads she provided him. In his brief, Plaintiff provides evidence that he, in fact, did substantially participate in vocational efforts. However, "[t]his Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Webb,141 N.C.App. at 512, 540 S.E.2d at 793 (citation, quotation marks, and brackets omitted). Here, there is competent evidence in the record supporting the Commission's finding of fact # 16, which in turn supports the Commission's conclusion of law # 4.
Assignment of Error # 3
In his final assignment of error, Plaintiff argues the Commission erred by concluding Plaintiff is no longer entitled to vocational rehabilitation.
Plaintiff challenges the Commission's conclusion of law # 5 which provides the following:
In worker's compensation cases, "disability or a diminished capacity to earn money, must be shown before vocational rehabilitation services can be awarded or reinstated as part of a worker's compensation claim." ... Thus, Plaintiff is not entitled to reinstatement of vocational rehabilitation services, absent a determination of disability.
Here, the Commission concluded in conclusion of law # 4 that Plaintiff did not meet his burden of demonstrating incapacity to earn wages and therefore, Plaintiff had not shown a compensable disability. As previously discussed, there is competent evidence in the record that supports the Commission's findings of fact that Plaintiff did not meet his burden of demonstrating incapacity to earn wages, which in turn supports the Commission's conclusion of law # 4. This Court has held that vocational rehabilitation services cannot be awarded or reinstated until the employee meets his burden of establishing disability. See Johnson v. S. Tire Sales & Serv., Inc.,---N.C.App. ----, ----, 758 S.E.2d 19, 24 (2014). As the Commission concluded that Plaintiff failed to meet his burden of proving disability, Plaintiff is not entitled to reinstatement of vocational rehabilitation.
V. Conclusion
For the aforementioned reasons, we affirm the Commission's Opinion and Award.
AFFIRMED.
Judges STEELMAN and DAVIS concur.
Report per Rule 30(e).
Judge STEELMAN concurred in this opinion prior to 30 June 2015.
Opinion
Appeal by Plaintiff from Opinion and Award entered 16 October 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 June 2015.