***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission Affirms with modifications the Opinion and Award of Deputy Commissioner Stanback and enters the following Opinion and Award.
 ************
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Both the Plaintiff and the Defendants are subject to the Act.
4. The Defendant-employer is self-insured, with Key Risk Management Services, incorporated as the third-party administrator.
5. The Plaintiff was the employee of Defendant employer Burke County Public Schools on October 14, 2005.
6. Plaintiff sustained compensable injury by accident on or about October 14, 2005 while working for Defendant employer, when she strained her neck.
7. Plaintiff-employee's average weekly wage is $320.78.
8. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Industrial Commission Forms, Report of Injury, Occupational Health and Medical Records; Job Description; Ergonomic Report; Discovery
 c. Stipulated Exhibit #3 — Letter dated July 23, 2008
9. Issues for determination include the following:
 a. Whether the modified special needs teacher assistant job is suitable employment, whether it is otherwise available within the economy, and whether it was specially created for plaintiff;
 b. Determination of all compensation due Plaintiff; *Page 3 
 c. Whether N.C. Gen. Stat. § 97-25.1 future treatment order should be entered, including medications, doctor visits, and a TENS unit.
 d. Whether or not Plaintiff refused suitable employment?
 e. Whether or not Plaintiff is disabled or totally disabled as a result of the work injury of October 14, 2005?
 ************
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 53 years old at the time of the hearing before the deputy commissioner. She finished high school and took some college courses and received a CNA certificate. She also took a course in phlebotomy and accounting. She worked at Broughton Hospital for seven and a half years as a CNA/health care technician prior to working for the Defendant.
2. In 2000, Plaintiff started working for Defendant, Burke County Public Schools at North Liberty School as a teacher's assistant in a special needs class. Plaintiff's teacher's assistant job description indicates that she would work one on one for a student with severe behavioral problems.
3. On October 14, 2005, plaintiff sustained an admittedly compensable neck injury while assisting a child to his classroom. Plaintiff did not really notice any pain at work so she continued to work. It was not until after she got home that her pain got worse.
4. On October 15, 2005, Plaintiff presented to Burke Primary Care, where she was seen by Physician's Assistant William Vaassen. Plaintiff complained of pain in the neck and *Page 4 
medial scapula area and was diagnosed with cervical and upper thoracic strain. Plaintiff continued to treat with Burke Primary Care and was referred to Dr. Ralph Maxy on December 2, 2005.
5. On February 1, 2006, Plaintiff presented to Dr. Ralph Maxy, an orthopedic surgeon with Carolina Orthopedic Specialists, with neck pain. Dr. Maxy had previously treated Plaintiff for some medical conditions unrelated to her work injury such as her low back, knees, ankles, and foot. He also was the surgeon who initially operated on her neck in June of 2003 for a disk herniation at C5/6 and C6/7 which had healed well after the surgery. After the February 1, 2006 visit, Dr. Maxy obtained a CT of Plaintiff's cervical spine which showed that all the hardware was in good position and the bone had healed nicely. There was no evidence of a disk herniation or anything pinching the nerves in her neck. He diagnosed her with a cervical strain.
6. Plaintiff returned to Dr. Maxy on April 3, 2006 with complaints of left knee pain and again on April 10, 2006 with complaints of right hand pain. These conditions are unrelated to Plaintiff's workers' compensation injury.
7. On April 12, 2006, Plaintiff complained to Dr. Maxy of neck pain with minimal improvement. His workup showed no pathology to explain the symptoms. All objective pathologies/studies including x-ray, CAT scan, myelogram, showed no objective pathology. None of the bones were out of place and no nerve was being pinched. She was diagnosed with a cervical strain and he placed her on restrictions of no lifting heavier than 15 pounds, no excessive or repetitive bending, twisting or stooping which Dr. Maxy anticipated he would be able to lift in four weeks.
8. On May 10, 2006, Dr. Maxy released Plaintiff to go back to work with no restrictions and gave her a 1% permanent partial impairment rating of the cervical spine, based *Page 5 
on Plaintiff's subjective complaints, since there were no objective or radiographic findings on physical exam.
9. On May 24, 2006, Plaintiff for the first time complained to Dr. Maxy of shoulder pain. Dr. Maxy referred Plaintiff to Dr. Christopher Daley, a shoulder specialist in his office. A physical therapy note dated July 19, 2006 states that the patient reports soreness from painting and hammering at Bible school. Also, at that time, Plaintiff had a pain threshold of a four or five out of ten. For Dr. Maxy, this physical therapy note indicates a possible cause for her shoulder impingement injury.
10. Dr. Christopher Daley, an orthopedic surgeon with Carolina Orthopedic Specialists, saw Plaintiff on June 20, 2006 when she complained of right shoulder pain, ongoing neck pain and discomfort and some degree of radicular type arm pain. Plaintiff had generalized tenderness over the cervical spine but he could find no abnormal neurological findings. Plaintiff had good motion of both shoulders and impingement signs of her shoulder at that time in the right shoulder.
11. On September 8, 2006, Dr. Daley's impression was that Plaintiff's neck was causing her shoulder symptoms but not the shoulder impingement. Plaintiff's EMG nerve conduction study was essentially normal. On September 25, 2006 an MRI was done which showed mild changes at the AC joint, which is the end of the collarbone.
12. Dr. Daley saw Plaintiff again on October 6, 2006 and his diagnosis remained the same as impingement syndrome with neck pain, and he referred Plaintiff to physical therapy. On November 17, 2006, Dr. Daley arranged for Plaintiff to have a functional capacity evaluation (FCE) to determine what, if any, permanent restrictions she should have. The FCE indicated that the Plaintiff should be able to function at a medium job. *Page 6 
13. On January 2, 2007, a workers' compensation medical status questionnaire indicated that Plaintiff needs assistance with any lift or transfer of more than 45 pounds and recommended the use of a mechanical lift for students weighing up to 100 pounds.
14. On January 30, 2007, Dr. Daley gave Plaintiff a zero percent impairment rating to Plaintiff's shoulder/arm. This rating was based on Plaintiff's history, physical examination and ancillary testing of the patient and a review of the North Carolina workers' compensation guide. Dr. Daley opined that Plaintiff did not have any permanent partial disability from the injury as described.
15. On October 1, 2008, Dr. Daley discharged Plaintiff to return as needed and suggested that Plaintiff continue to work and learn to live with the pain. He diagnosed her with chronic neck and shoulder pain exacerbated from work related injuries on two occasions and opined that the second diagnosis is not related to the work injury. The Plaintiff was having some of the symptoms before the second injury. For example, on November 26, 2003, she had an injection by Dr. Maxy into the left shoulder at that time which was well before the injury in 2005.
16. Based on Dr. Maxy's last evaluation of Plaintiff on May 24, 2006, his review of the FCE and of the job description for a teacher's assistant, it was Dr. Maxy's expert opinion based on a reasonable degree of medical certainty that Plaintiff can perform the duties of a teacher's assistant. Dr. Maxy recommended that Plaintiff not lift objects over 40 or 50 pounds.
17. On September 12, 2006, Plaintiff reported to told Dr. Maher Habashi that she was injured at work on October 14, 2005 while lifting a boy with his harness. Dr. Habashi noted that Plaintiff had a previous impairment rating to her neck/back of 15%. Dr. Habashi diagnosed her with degenerative arthritis cervical spine rendered symptomatic by injury. Dr. Habashi gave her *Page 7 
an 8% permanent partial impairment rating to her back based on her pain, tenderness, and x-ray findings. When Dr. Habashi saw Plaintiff, she was within normal range for her age. She had full range of motion with no limitation. Three days after Dr. Habashi saw Plaintiff, a nerve test showed a normal finding of right median nerve and right ulner nerve.
18. On May 3, 2007, at the request of Plaintiff's counsel, Dr. Habashi examined Plaintiff for a second opinion regarding a disability rating for Plaintiff's right shoulder. Plaintiff complained of right shoulder and neck pain. Dr. Habashi only spent approximately 20 or 30 minutes with Plaintiff during his exam. Only 20% of his practice is devoted to spinal conditions. Dr. Habashi thought that Plaintiff's cervical fusion was related to a motor vehicle accident.
19. Dr. Habashi diagnosed Plaintiff with rotator cuff impingement syndrome. He gave her a 10% partial impairment rating to her right arm as a result of the work injury. He believed her work restrictions were 30 pounds, no heavy pushing, pulling or excessive repetitive bending. After this visit, he changed her work restrictions to no lifting above 20 pounds and no reaching above the shoulder level all day long. Dr. Habashi has not seen the Plaintiff since his meeting with her in May 3, 2007. Dr. Habashi admitted that in order to know what her current restrictions should be, he would need to see Plaintiff, have a discussion with her, and do a physical examination on her.
20. Dr. Habashi opined that if Plaintiff does not have a job that requires her to lift over her restrictions or heavy pushing or pulling, she should be able to do that job.
21. Dr. Daley's and Dr. Maxy's testimony is more credible than Dr. Habashi's testimony as they were the authorized treating physicians and saw her over an extended period of time. Dr. Habashi on the other hand only saw her for approximately 20 minutes and did not base his opinions on an FCE. Additionally, Dr. Daley was the last physician to treat Plaintiff and is in *Page 8 
the best position to render an opinion on her current condition.
22. The greater weight of the credible evidence shows that the October 14, 2005 compensable work injury did not cause the impingement of Plaintiff's shoulder. Dr. Daley's work restrictions remained the same as of October of 2008. Dr. Daley reviewed the generic job description for a teacher's assistant and opined that based on his evaluation, the job description, and the Plaintiff's FCE, there was no reason Plaintiff could not do the teacher's assistant job. Dr. Daley also gave further insight to the job description by testifying that the no lifting of over 45 pounds referred to a lifting restriction done by Plaintiff alone. The Plaintiff should be able to lift weight of between 45 to 100 pounds by herself by using a Hoyer lift mechanism.
23. Plaintiff claims her job as a teacher's assistant was modified in that she can not lift. However, the undersigned find that this job was not modified. Even prior to Plaintiff's compensable work injury in 2005, there were at least two teacher's assistants outside assisting the children in and out of the cars. Plaintiff had car duty from 7:30 to 8:55 each morning at school. The parents typically do most of the work of getting the children in and out of the vehicle or wheelchair. If anyone, whether injured or not, feels uncomfortable lifting or assisting a child in or out of a vehicle, they request assistance and someone from the school or the care giver for the child will do it. It is common for the teacher's assistants to request assistance when they need it.
24. There is also normally at least one teacher and one teacher's assistant in the classroom. Additionally, there is a grandmother that volunteers in Plaintiff's particular class room. The weight of the children varies between fifty to one hundred pounds. Plaintiff testified that Kim Baker, the teacher in Plaintiff's classroom that she is assigned to has a back problem and she cannot lift so they both called for assistance when and if a child was on the floor. *Page 9 
Usually when that happens, the grandmother is in the room and Plaintiff can call out or walk to the classroom door to request assistance.
25. The Full Commission finds based upon the greater weight of the evidence that Plaintiff is not required to lift any children in her teacher's assistant job. For those teacher's assistants who do lift children in the school, there is a Hoyer lift available. In addition, there are no requirements for heavy pushing or pulling or excessive bending.
26. In June of 2008, Plaintiff met with Mike Holder, the Principal of North Liberty. At that meeting, Plaintiff requested that she be allowed to return to the same classroom that she has been in since 2006. Arrangements were subsequently made for her to return to her position as a teacher's assistant in the same classroom starting on August 9, 2008.
27. Plaintiff has made no efforts to look for other employment. No treating physician has taken Plaintiff out of work. Since her injury, Plaintiff has continued to receive all State raises and continued to work for the same employer. She never filed a 25U indicating that she did not have a successful return to work and she never quit her job.
28. The Full Commission finds based upon the greater weight of the credible evidence that the teacher's assistant position is a suitable job for the Plaintiff. This job has been advertised to the public. Other teacher's assistants have held Plaintiff's position in that same classroom and if for some reason, Plaintiff chose not to come back to work, another assistant would be hired to fill her position.
29. Ms. Jill Schwacke retired on July 1, 2008 after teaching for thirty-two and a half years. The last fifteen years were spent at North Liberty. She was personally familiar with most of the children in Plaintiff's class as she taught a lot of them herself. She confirmed that there is *Page 10 
no lifting requirement in her classroom or excessive bending, or pushing or pulling. It is the employment nature of the school for everyone to assist each other.
30. Ms. Kim Baker is an exceptional children's teacher with Burke County Public Schools. Plaintiff is a teacher's assistant in Ms. Baker's class and has been for the last two to three years. For the school year 2008-2009, Ms. Baker's class has eight children. The children in her class do not require any lifting to change diapers because they are all ambulatory.
31. No doctor took Plaintiff out of work and both treating physicians opined that Plaintiff was able to perform her duties as a teacher's assistant for Defendant. The Full Commission finds based upon the greater weight of the credible evidence that the Plaintiff is capable of performing the teacher's assistant position and that the teacher's assistant position is within Plaintiff's restrictions.
32. There is no evidence that Plaintiff ever looked for any work or that she was incapable of working as a teacher's assistant in any other position or place of employment. Nor was it futile for her to look for work due to any pre-existing condition.
33. Plaintiff has failed to show that her shoulder impingement is related to the workers' compensation injury of October 14, 2005.
 ************
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on October 15, 2005 while working for Defendant. N.C. Gen. Stat. § 97-2(6). *Page 11 
2. Plaintiff has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and the employment. Whitfield v. Lab. Corp. ofAmer., 158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003). In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation.Click v. Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Where medical opinion testimony is required, "medical certainty is not required, but an expert's `speculation' is insufficient to establish causation."Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility."Holley, 357 N.C. at 232, 581 S.E.2d at 753.
3. Plaintiff has met her burden of proving a causal relationship between her October 15, 2005 work injury and her neck injury.Id. However, Plaintiff has failed to prove a causal relationship between her work injury and her shoulder impingement injury. Id.
4. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, supra.
5. Plaintiff failed to prove that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in an effort to obtain employment, that she is capable of some work but that it would be futile *Page 12 
because of preexisting conditions, i.e. age, inexperience, lack of education, to seek other employment; or that she has obtained other employment at a wage less than that earned prior to the injury. Therefore, Plaintiff has failed to meet her burden of establishing that she is disabled and unable to earn wages due to her October 15, 2005 work injury. Id.;
N.C. Gen. Stat. §§ 97-2(9), 97-29, and 97-30 (2005).
6. Plaintiff has only established an entitlement to benefits for her 1% impairment to her cervical spine as found by Dr. Maxy pursuant to N.C. Gen. Stat. § 97-31.
7. Plaintiff's job at North Liberty Middle School/Burke County Public Schools as a teacher's assistant is a real job which is ordinarily available in the competitive job market. Peoples v.Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798, (1986). In addition, the teacher's assistant job is suitable employment which Plaintiff is capable of performing within her restrictions.Webb v. Power Circuit, Inc.,141 N.C. App. 507, 540 S.E.2d 790 (2000), cert. denied353 N.C. 398, 548 S.E.2d 159 (2001). 58 N.C. 701, 599 S.E.2d 508.
8. If an injured employee refuses employment procured for him, which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of *Page 13 
such refusal, unless in the opinion of the Commission such refusal was justified. In this case, plaintiff is not justified in discontinuing her work as a teacher's assistant for Defendant.Jenkins v. Easco Aluminum Corp.,142 N.C. App. 71, 541 S.E.2d 510 (2001).
9. Plaintiff is entitled to have Defendants pay for all medical treatment reasonably necessary to effect a cure or provide relief to plaintiff's cervical spine injury. N.C. Gen. Stat. § 97-25.
 ************
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff is entitled to a 1% disability rating to her back/neck less any credits due to Defendant at the compensation rate of $320.78 per week.
2. Plaintiff's attorney is entitled to 25% of all compensation due Plaintiff/
3. Each side shall bear its own costs.
This the 22nd day of December 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 14 
 S/___________________ DANNY L. McDONALD COMMISSIONER